THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
Civil Division

| | |
|---|---|
| EMMA FAIRWEATHER, )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>REED ILLINOIS CORPORATION D/B/A/ )<br>REED CONSTRUCTION, )<br>600 W Jackson Blvd., 8th Floor, )<br>Chicago, Illinois 60661, )<br>)<br>Serve Registered Agent: )<br>)<br>William T. Birck, )<br>600 W Jackson Blvd., Ste 500, )<br>Chicago, IL 60661, )<br>)<br>*Defendant*. )<br>) | Civil Action No. _____ |

**PLAINTIFF EMMA FAIRWEATHER'S CIVIL COMPLAINT FOR EQUITABLE AND
MONETARY RELIEF AND DEMAND FOR JURY AGAINST
<u>DEFENDANT REED ILLINOIS CORPORATION D/B/A REED CONSTRUCTION</u>**

Plaintiff Emma Fairweather, by and through counsel, files this civil complaint and demand for jury trial against Defendant Reed Illinois Corporation d/b/a Reed Construction (Reed or Reed Construction) for violations of 42 U.S.C. § 1981, *et seq.* (Section 1981), the Equal Pay Act of 1963, 29 U.S.C. § 206 *et seq.* (EPA), and the Illinois Equal Pay Act of 2003, 820 ILCS 112/1 *et seq.* (IEPA).

**JURISDICTION AND VENUE**

1. This Court has personal jurisdiction over Reed because it is headquartered and has substantial business contacts with and conducts business in the Northern District of Illinois.

2. This Court has subject matter jurisdiction over the claims in this complaint

1

pursuant to 28 U.S.C. § 1331 because this is an action arising under the laws of United States, specifically Section 1981, and the EPA. As to those claims not arising under federal law, supplemental jurisdiction exists under 28 U.S.C. § 1367

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because it is the judicial district where the relevant events took place.

## PARTIES

4. Plaintiff Emma Fairweather is a resident of Chicago, Illinois and worked for Reed from in or around January 2012 until on or around April 13, 2021.

5. Defendant Reed is an Illinois corporation with its headquarters at 600 W. Jackson Boulevard, 8th Floor, Chicago, Illinois 60661.

## FACTUAL ALLEGATIONS

**Fairweather began working for Reed in 2012.**

6. Fairweather is a 33-year-old, African American female living in Chicago, Illinois.

7. Fairweather was born and raised in Belize, and she moved to the United States in or around 2008.

8. Reed hired Fairweather in or around January 2012 as a field coordinator.

9. Reed is a family-owned full-service construction firm, and William Birck (white, male, American-born) is its chief executive officer.

10. When Fairweather started at Reed in or around January 2012, Reed had no human resources (HR) department, director, or staff.

11. When Fairweather started at Reed in or around January 2012, Reed employed approximately 60 employees, with approximately 20 employees located in Reed's office and 40 employees located in the field.

**Fairweather established Reed's HR department.**

12. Fairweather had prior experience working in HR, and she recognized the need for Reed to create a HR department.

13. In or around 2013, Fairweather approached Birck to discuss Fairweather taking on HR responsibilities. Fairweather became Birck's executive assistant while concurrently performing her duties as a field coordinator. She also assumed HR and marketing responsibilities.

14. Fairweather constructed Reed's entire HR department from the ground up, implementing standard HR procedures, protocols, employee benefits, onboarding, recruiting, and anti-discrimination training, while Fairweather simultaneously managed the information technology department and marketing responsibilities.

15. Fairweather performed multiple concurrent roles and responsibilities (including field coordinator, executive assistant, HR, marketing, and reception) at Reed from in or around 2012 until in or around September 2015.

16. Fairweather performed well in her multiple roles, and in September 2015, Reed promoted Fairweather to HR generalist after she advocated for herself in support of her current workload and responsibilities; and in June 2017, Reed promoted Fairweather to the role of HR manager, again only after she advocated for herself in support of her current workload and responsibilities at the time.

**Reed subjected Fairweather to discrimination.**

17. Fairweather experienced discrimination from Reed based on her sex, race, ethnicity, and national origin during the period of 2012 through 2021. Fairweather's white colleagues were given promotions and raises and afforded the ability to hire subordinate employees to assist with workload.

18. Fairweather's American-born colleagues were given promotions and raises and

3

afforded the ability to hire subordinate employees to assist with workload.

19. Prior to Fairweather implementing recruiting policies, Reed spent over $400,000 a year on third-party recruiting payments. Due in part to Fairweather's policies and HR guidance, by 2017, Reed had approximately 150 employees, with 70 employees in the office and 80 employees in the field.

20. Fairweather saved Reed thousands of dollars through her implementation of various HR policies, procedures, benefits, employee relation issues, and due diligence with union audits.

21. In or around June 2017, Fairweather became a member of Reed's executive leadership team, and Bryan Kreuger, Reed's president and COO (white, male, American-born), became Fairweather's direct supervisor. Birck was Fairweather's second line supervisor.

22. Reed's executive leadership team was comprised of Birck; Kreuger; Ashley Polino (white, female, American-born), CFO; Scott Pickands (white, male, American-born), executive vice president and director of preconstruction; Michael Machat (white, male, American-born), executive vice president of business development; Joseph Kozlowski (white, male, American-born), vice president and director of project management; and Fairweather.

23. Fairweather was the only minority and non-American-born member of the executive team, and she was one of two females on the executive team.

24. In or around 2018, Machat commented to Fairweather that she "floated over to America" on a raft from Belize in response to the airing of a news story. Fairweather reported the inappropriateness of this comment to Kreuger, but Kreuger shrugged it off and said there was nothing he could do because Birck liked Machat.

25. Fairweather received numerous reports from Reed employees about racist

comments made by Machat, but Kreuger and Birck refused to discipline or censure Machat.

**Reed subjected Fairweather to increased discrimination in 2020 and 2021.**

26. In or around March 2020 when the COVID-19 pandemic began to impact the United States, Fairweather experienced a significant and blatant discrepancy in Reed's treatment of minority and non-minority employees that became unbearable to endure.

27. Fairweather was tasked to organize and execute all COVID-19 responsibilities for Reed from March 2020 until she was forced to resign on April 13, 2021. Fairweather had little to no guidance from leadership throughout this process.

28. On or around April 27, 2020, Reed received a $2,084,165 Paycheck Protection Loan to support a reported 110 positions.

29. Birck instructed Fairweather to have all employees report to the office in person as early as June 2020 and during racially charged protests in the wake of George Floyd's murder.

30. During Fairweather's June 2020 Annual Review meeting with Kreuger, Fairweather raised the issue of inequity in her workload and compensation as compared to Fairweather's colleagues on the executive team.

31. In response, Kreuger informed Fairweather that he would be sad to see Fairweather go but her salary was what it was and if Fairweather left, Kreuger would hire another HR employee to run the department.

32. Around the time of Fairweather's annual review, she advocated for her colleagues, Jesse Anaya (Latino, male), and Beth Anderson (white, female, American-born), to receive an increase in their bonuses.

33. This request was denied by Kreuger.

34. Fairweather then offered that the money be taken out of her personal bonus, in order for Anaya and Anderson to have the bonus they deserved.

5

35. The request was then granted.

36. In or around early December 2020, Birck and Kreuger instructed Fairweather to furlough Fairweather's only direct report, Beth Anderson (white, female, American-born). This was soon after Fairweather requested a promotion and title change for Anderson.

37. The request was granted, but Anderson was not to receive a pay change until January 2021. Anderson was given her new title and new responsibilities immediately but had to wait for her pay increase. Due to being furloughed, she never received the pay increase.

38. Anderson was a high performing employee, but Birck and Kreuger insisted that Anderson needed to be furloughed due to purported budgetary constraints.

39. Fairweather resisted because Fairweather was simultaneously responsible for all HR functions, the IT department, and all COVID-19 issues and concerns, and Anderson's termination would leave Fairweather without support.

40. In response, Birck told Fairweather that if she did not furlough Anderson by the end of December 2020, Anderson's paycheck would come out of Fairweather's salary. This was a frequent tactic used by Birck to threaten managers who disagreed with his decisions.

41. Approximately one week after Fairweather was forced to furlough Anderson, Polino received a $54,000 salary increase and promotion to CFO.

42. In mid-December 2020 when Polino received the raise, she had a team of four employees who reported to her in the finance department.

43. In or around January 2021, Fairweather complained to Birck and Kreuger of her workload and requested to bring back Anderson. In response, Birck informed Fairweather Anderson would never be rehired, that it was never his intent to bring Anderson back, and that instead Reed needed to hire a full-time recruiter.

6

44. Fairweather proceeded with interviewing for a recruiting position, and she interviewed Logan Anderson (white, male, American-born (no relation to Beth Anderson)) via videoconference.

45. When Logan arrived in the office for an in-person interview, Birck completed Logan's interview, gave Logan a tour of the office, and did not introduce Logan to Fairweather, though Logan would be directly working for Fairweather.

46. After he interviewed Logan, Birck instructed Fairweather to hire Logan at a salary $13,500 higher than Anderson's salary when she was furloughed—purportedly for budgetary reasons.

47. In or around January 2021, Birck permitted Polino to promote one of her white, female team members to account specialist and give the employee a 15% raise.

48. After the same white, female account specialist complained, the same employee received an additional 17% raise.

49. In or around February 2021, Kreuger received a $15,000 a month bonus for two years and promotion to President.

50. In or around March 2021, Machat received a $50,000 raise, and Megan Thornton (white, female, American-born) received a $25,000 raise and promotion to Marketing Director.

51. In or around February 2021, during Fairweather's Quarterly Review, she was promised a promotion to Chief People Officer (CPO).

52. A few days later, Fairweather was advised by Birck and Krueger that she may or may not receive the promotion, but that she would still be assuming the role and responsibilities of a CPO regardless of a pay raise.

53. In or around the beginning of March 2021, Fairweather emailed Kreuger a pay

7

increase proposal for Jesse Anaya (Latino, male), Reed's IT manager. This was ultimately ignored. Fairweather never received a response, and the proposal was never addressed until after Fairweather's resignation letter cited the discrimination.

54. In or around March 2021, Kreuger informed Fairweather that, in addition to managing two departments, navigating COVID-19 protocols, all HR functions, and training Logan as a new recruiting employee, Fairweather was also now responsible for planning the company picnic to be held on July 10, 2021, and that "[Birck] and his family would like to feel like true guests at the picnic."

55. In the past, the planning for the company picnic was delegated to the marketing department, but the responsibility was given to Fairweather, the only minority employee on the executive team, without any explanation or reasoning.

**Fairweather was constructively discharged.**

56. In or around the end of March 2021, Fairweather took her first vacation since 2009. Fairweather traveled to Belize to visit her family.

57. Fairweather drafted a comprehensive email to Kreuger prior to leaving for her vacation; and the email outlined the disparate treatment Fairweather endured due to her gender, race, ethnicity, and national origin. She also reported discrimination experienced by employees such as Anderson and Anaya.

58. While on vacation, Fairweather was contacted regarding a Wi-Fi issue in the office. Management demanded that she address this issue immediately with Anaya even though she was on vacation. Birck and Kreuger were both present in the office on this day, mere steps from Anaya's office.

59. Fairweather, again while on vacation, was delegated to resolve a legal matter with Reed's attorney. This was something Kreuger should have handled in her absence but insisted

8

that she resolve on vacation.

60. On or around April 6, 2021, while Fairweather was on vacation, and the day of her son's birthday, Kreuger emailed Fairweather, informing Fairweather that Fairweather would be additionally tasked with planning Reed's leadership retreat, which was to be held on June 17 and 18, 2021.

61. Fairweather noted that Anaya, the only non-white manager, was the only managerial-level employee who was not invited to the retreat.

62. When Fairweather returned to the office on April 13, 2021, the work environment at Reed was intolerable.

63. Upon returning from vacation, Fairweather was told separately by both Matthew Mahoney and Kreuger that she and Anaya would have to issue an apology for the Wi-Fi issues even though the issues were out of their control. A meeting was scheduled but never completed due to Fairweather's departure from the company.

64. Accordingly, Fairweather converted the complaint email she had drafted into a resignation letter and submitted it on April 13, 2021.

65. At the time Fairweather was constructively discharged, her annual salary was $117,000, Birck's annual salary was $520,000, Pickand's annual salary was $285,00, Kreuger's annual salary was $260,000, Machat's annual salary was $250,000, Kozlowski's annual salary was $220,000, and Polino's annual salary was $180,000.

66. Birck's wife, Beverly Birck, receives an $80,000 annual salary and 401k match from the company. She is not an employee and is only involved in small events from time to time.

67. Beverly Birck never experienced a hold on her salary during COVID-19, while

9

employees who were needed in various departments were being furloughed due to "budgetary reasons."

68. At the time Fairweather was constructively discharged, Myles Soverel, Frank Salemi, David Crane, Mark Zolen, Raymond Graham, Joseph Perri, Charles Knapp, John Schmitz, Harris Menos, and Ira Stroud were all similarly situated male Reed employees who earned higher wages than Fairweather, who were in non-managerial roles, and who had less responsibilities than Fairweather at Reed.

**Reed Construction filed a retaliatory counterclaim against Fairweather.**

69. On July 12, 2021, Fairweather, through her counsel, notified Reed Construction that she intended to bring claims against it for discrimination in violation Section 1981 and the Equal Pay Act.

70. Reed Construction filed counterclaims against Fairweather, as a Joinder Defendant, in this civil action on July 14, 2021. The counterclaims allege violations by Fairweather of The Computer Fraud and Abuse Act, breach of fiduciary duty, and breach of contract. Def.'s Counterclaims, July 14, 2021, Dkt. No. 4 1:21-cv-2624.

71. Reed filed these counterclaims in retaliation for Fairweather's protected activity in her communication to Reed on July 12, 2021.

72. Fairweather has filed a motion to dismiss Reed's counterclaims against her.

73. As the result of Reed's illegal actions, Fairweather has sustained economic damages and mental anguish, and she will continue to sustain damages into the future.

**COUNT I**
**Race Discrimination in Violation of**
**§ 1981 of the Civil Rights Act of 1866**

74. Fairweather hereby incorporates the allegations set forth in the foregoing

paragraphs as though fully alleged herein.

75. Fairweather is African American and was born in Belize.

76. Reed unlawfully subjected Fairweather to discrimination in workload, pay, and treatment because of her race and national origin.

77. By conduct including, but not limited to the allegations described above, Reed intentionally discriminated against Fairweather because of her race and national origin in the enjoyment of the benefits, privileges, and terms and conditions of her employment in violation of Section 1981.

78. Reed acted with malice or reckless disregard for Fairweather's federally protected rights under Section 1981.

79. Reed was aware of the nature and scope of racial and national origin discrimination against Fairweather but took no action to remedy the discrimination.

80. Fairweather has sustained damages as the result of Reed's illegal discrimination in violation of Section 1981, included but not limited to lost wages, lost bonuses, damage to her career and emotional, mental and physical distress and anxiety.

81. Fairweather is entitled to such legal or equitable relief as will effectuate the purposes of Section 1981, including but not limited to economic and compensatory damages, and reasonable costs and attorney's fees.

## COUNT II
### Retaliation in Violation of
### § 1981 of the Civil Rights Act of 1866

82. Fairweather hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

83. Reed Construction filed counterclaims against Fairweather, as a Joinder

11

Defendant, in a civil action brought on July 14, 2021; the counterclaims allege violations by Fairweather of The Computer Fraud and Abuse Act, breach of fiduciary duty, and breach of contract. Def.'s Counterclaims, July 14, 2021, Dkt. No. 4 1:21-cv-2624.

84. Reed filed these counterclaims in retaliation for Fairweather's protected activity in her communication to Reed on July 12, 2021.

85. Reed Construction's counterclaims lack a reasonable basis in fact or law.

86. By conduct including, but not limited to the allegations described above, Reed intentionally retaliated against Fairweather.

87. Such retaliation is prohibited by Section 1981 and 42 U.S.C.A. § 1985.

88. As a result of the retaliation, Fairweather has suffered damages, including emotional distress.

89. Because Reed's actions were retaliatory and in willful or reckless violation of Fairweather's federal rights, Fairweather is entitled to an award of punitive damages.

### COUNT III
### Discrimination in Violation of
### The Equal Pay Act of 1963 (EPA)

90. Fairweather hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

91. Fairweather was an "employee" as defined by 29 U.S.C. § 206.

92. Reed is an "employer" as defined by 29 U.S.C. § 206.

93. Fairweather is female and is a member of the protected class that employers are prohibited from discriminating against on the basis of sex regarding wage payment according to 29 U.S.C. § 206(d).

94. Reed violated the EPA when it knowingly paid male employees more than it paid

Fairweather for equivalent work, including male employees who had significantly less job duties, authority, and responsibilities than Fairweather, and who had no direct reports.

95. Reed violated the EPA when it paid Fairweather less money than other executive level employees although she had been with the company longer and had greater responsibilities.

96. Reed's stated reasons for paying Fairweather less than men are false and are pretext for unlawful discrimination.

97. Fairweather has sustained damages as the result of Reed's illegal discrimination in violation of the Equal Pay Act and is entitled to such legal or equitable relief as will effectuate the purposes of EPA, including but not limited to economic and compensatory damages, and reasonable costs and attorneys' fees.

**COUNT IV**
**Retaliation in Violation of**
**The Equal Pay Act of 1963 (EPA)**

98. Fairweather hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

99. Reed Construction filed counterclaims against Fairweather, as a Joinder Defendant, in this civil action on July 14, 2021; the counterclaims allege violations by Fairweather of The Computer Fraud and Abuse Act, breach of fiduciary duty, and breach of contract. Def.'s Counterclaims, July 14, 2021, Dkt. No. 4 1:21-cv-2624.

100. Reed filed these counterclaims in retaliation for Fairweather's protected activity in her communication to Reed on July 12, 2021.

101. Reed Construction's counterclaims lack a reasonable basis in fact or law.

102. By conduct including, but not limited to the allegations described above, Reed intentionally retaliated against Fairweather in violation of the Equal Pay Act.

103. As a result of such filings Fairweather has suffered injuries in the form of expended time, money, and effort to defend the counterclaim.

104. As a result of the retaliation, Fairweather has suffered damages, including emotional distress.

105. Because Reed's actions were retaliatory and in willful or reckless violation of Fairweather's federal rights, Fairweather is entitled to an award of punitive damages.

## COUNT V
## Discrimination in violation of
## The Illinois Equal Pay Act (IEPA)

106. Fairweather hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

107. Reed violated the IEPA when it knowingly paid male employees more than it paid Fairweather for equivalent work, including male employees who had significantly less job duties, authority, and responsibilities than Fairweather, and who had no direct reports.

108. Reed violated the IEPA when it paid Fairweather less money than other executive level employees although she had been with the company longer and had greater responsibilities.

109. Reed's stated reasons for paying Fairweather less than men are false and are pretext for unlawful discrimination.

110. Fairweather has sustained damages as the result of Reed's illegal discrimination in violation of the IEPA and is entitled to such legal or equitable relief as will effectuate the purposes of IEPA, including but not limited to economic and compensatory damages, and reasonable costs and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Emma Fairweather respectfully requests that the Court enter judgment in her favor and award to her the following relief:

- A. Judgment against Defendant Reed Corporation for economic damages, compensatory damages, and punitive damages in amounts to be determined at trial;
- B. Pre-judgment interest;
- C. Reinstatement, promotion, or other equitable relief;
- D. Economic damages including front pay (in lieu of reinstatement) and back pay;
- E. Compensatory damages;
- F. Interest due on unpaid wages;
- G. Reasonable attorney's fees and the costs of this action, and;
- H. Any other relief this Honorable Court deems just and proper to award.

## **JURY DEMAND**

Plaintiff Emma Fairweather demands a jury for all issues to be so tried.

                    Respectfully submitted,

                    __/s/ John T. Harrington_____
                    John T. Harrington, Esq. (*pro hac vice* motion pending)
                    The Employment Law Group, P.C.
                    1717 K Street, NW
                    Suite 1110
                    Washington, DC 20006
                    202-261-2830
                    (202) 261-2835 (facsimile)
                    tharrington@employmentlawgroup.com
                    *Counsel for Plaintiff Emma Fairweather*


                    /s/Kristin M. Case_____
                    Kristin M. Case (Attorney No. 64366)
                    Case + Sedey, LLC
                    250 South Wacker Dr., Ste. 230
                    Chicago, Illinois 60606
                    Tel. (312) 920-0400
                    Fax (312) 920-0800
                    *Counsel for Plaintiff Emma Fairweather*